## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SCHLUMBERGER TECHNOLOGY CORP., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| GREENWICH METALS INC., | ) |
| | )   CIVIL ACTION |
| Defendant and | ) |
| Third-Party Plaintiff | )   No. 07-2252-KHV |
| v. | ) |
| | ) |
| XSTRATA CANADA CORP., | ) |
| | ) |
| Third-Party Defendant. | ) |

### MEMORANDUM AND ORDER

Schlumberger Technology Corporation ("Schlumberger"), which has a manufacturing facility in Lawrence, Kansas, purchased acid-grade lead from Greenwich Metals, Inc. ("Greenwich"), a metals broker in Connecticut. Schlumberger filed suit against Greenwich alleging breach of contract, breach of express warranty, breach of implied warranty of merchantability and unjust enrichment. Greenwich in turn filed a third-party complaint against Xstrata Canada Corporation ("Xstrata"), which supplied the lead, alleging negligence, breach of contract and breach of the implied warranty of merchantability. This matter is before the Court on Third Party Defendant Xstrata Canada's Motion To Dismiss For Lack Of Personal Jurisdiction (Doc #29) filed March 31, 2008. For reasons stated below, the Court sustains the motion.

### Legal Standards

Rule 12(b)(2), Fed. R. Civ. P., governs motions to dismiss for lack of personal jurisdiction. Third-party plaintiff bears the burden of establishing personal jurisdiction, and at this stage of the litigation, need only make a prima facie showing. Dudnikov v. Chalk & Vermillion Fine Arts, Inc., 514

F.3d 1063, 1069-70 (10th Cir. 2008).  Third-party plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction.  <u>TH Agric. & Nutrition, LLC v. Ace European Group Ltd.</u>, 488 F.3d 1282, 1286 (10th Cir. 2007).  To the extent they are uncontroverted, the Court must accept as true the well-pleaded allegations of the third-party complaint.  <u>Wenz v. Memery Crystal</u>, 55 F.3d 1503, 1505 (10th Cir. 1995).  If the jurisdictional allegations are challenged by an appropriate pleading, third-party plaintiff has the duty to support jurisdictional allegations by competent proof of supporting facts.  <u>Pytlik v. Prof'l Res., Ltd.</u>, 887 F.2d 1371, 1376 (10th Cir. 1989).  The Court resolves any factual disputes in favor of third-party plaintiff. <u>Wenz</u>, 55 F.3d at 1505.

### Factual Background

The complaints and record evidence are summarized as follows:

Schlumberger is a Texas corporation with its principal place of business in Sugar Land, Texas and a manufacturing facility in Lawrence, Kansas.  Schlumberger provides services and technology to the oil and gas industry.  Greenwich, a metals broker, is a Connecticut corporation with its principal place of business in Greenwich, Connecticut.  Xstrata is a Canadian corporation with its principal place of business in Toronto, Canada.  Xstrata is not registered to do business in Kansas and it does not have any agents, employees, representatives, sales associates or distributors in Kansas.  Xstrata does not maintain offices, properties, books, records or bank accounts in Kansas.  Xstrata does not advertise or solicit customers in Kansas.  Xstrata does not file tax returns in Kansas.  Xstrata mines, smelts and refines metals including, nickel, copper, zinc, and lead.[1]

---

[1]        At the time of the relevant events, Falconbridge, Inc. owned the smelting operation which Xstrata has since purchased.  For ease of reference, the Court will refer simply to Xstrata when
(continued...)

In the spring of 2006, Schlumberger began negotiating with Greenwich to buy large quantities of acid-grade lead.  During these negotiations, Schlumberger gave Greenwich product specifications which detailed the chemical composition of the lead.  In early May of 2006, Greenwich contacted Xstrata to determine whether it could produce the lead to those specifications.  Xstrata determined that it could manufacture the lead at its plant in New Brunswick, Canada.  It then submitted a price quote from its Toronto office to the Greenwich office in Connecticut.  Greenwich accepted the price quote and Xstrata agreed to ship the lead to the Greenwich warehouse in Kansas City, Kansas, F.O.B. New Brunswick, Canada.[2]

On May 24, 2006, Schlumberger, Greenwich and Xstrata employees participated in a teleconference at which they discussed certain characteristics of the lead and its anticipated use at the Schlumberger manufacturing facility in Lawrence, Kansas.[3]

Between May 25 and June 2, 2006, Greenwich and Xstrata exchanged facsimiles and emails about Schlumberger's proposed order.  By email dated June 2, 2006, Greenwich president Peter Appleby

---

[1](...continued)
identifying the company.

[2]      Under the Uniform Commercial Code ("UCC"), F.O.B. stands for "free on board" and is a delivery term which controls risk of loss.  U.C.C. § 2-319(1).  Where F.O.B. is the place of shipment (as opposed to the place of destination), the seller bears the expense and risk of delivering the goods to the carrier at the F.O.B. location.  Id. § 2-319(1)(a).
At the time of the agreement, Xstrata mistakenly believed that the Greenwich warehouse was located in Kansas City, *Kansas*.  It is actually located in Kansas City, *Missouri*.  Xstrata's mistake apparently resulted from an email which Peter Appleby, Greenwich president, sent to Xstrata on May 26, 2006.  See Affidavit Of Peter Appleby ¶¶ 19-20. attached to Memorandum Of Law In Opposition To Third-Party Defendant Xstrata Canada Corporation's Motion To Dismiss For lack Of Personal Jurisdiction (Doc #41) filed April 29, 2008.

[3]      Peter Appleby, president of Greenwich, represented Greenwich.  At his request, Jay Hemenway (an Xstrata engineer) participated on behalf of Xstrata.  Debby Roberts, Melissa VerMeer, Matt Eales, and Mark Metzger represented Schlumberger.

instructed Jay Hemenway, an Xstrata engineer, to send a sample of the lead directly to the Schlumberger manufacturing facility in Kansas.  Xstrata sent Schlumberger a two-pound sample.  Xstrata did not receive any complaints about the sample.

On June 5, 2006, Schlumberger issued three purchase orders to Greenwich for specific quantities of lead to be delivered on July 14, August 11 and September 8, 2006, respectively.  Between June 9 and June 18, 2006, Xstrata produced the entire order of lead at its New Brunswick plant.

On July 11, 2006, Appleby sent an email from Greenwich to Debby Roberts, at Schlumberger, informing her that the lead had been shipped to the Greenwich warehouse in Kansas City, Missouri and was available to be delivered to the Schlumberger manufacturing facility in Lawrence, Kansas.  Appleby copied Dan Marcotte, an Xstrata employee, on the email.

On August 10, 2006, Roberts sent an email from Schlumberger to Appleby, with a copy to Marcotte, asking Greenwich to suspend the lead shipments from its warehouse.  Greenwich did so and notified Xstrata of Schlumberger complaints with the lead.  The same day, Matt Eales, a Schlumberger employee, emailed Appleby, with a copy to Marcotte, asking Greenwich and Xstrata to help determine the problem with the lead.  Appleby then called Marcotte to arrange a telephone conference.

On August 14, 2006, representatives of Schlumberger, Greenwich and Xstrata participated in a teleconference at which they discussed problems with the lead.[4]  After the teleconference, Hemenway emailed his contact information to Eales so that they could further discuss the complaints.

In its third-party complaint, Greenwich alleges that by delivering defective lead, Xstrata negligently manufactured the lead and breached the production agreement and the implied warranty of

---

[4]        Appleby participated in the teleconference for Greenwich.  Hemenway and Marcotte participated in the teleconference for Xstrata.  Eales, VerMeer, Metzger and Ken Owens participated for Schlumberger.

merchantability.  Xstrata seeks to dismiss the third-party complaint for lack of personal jurisdiction.

## Analysis

To obtain personal jurisdiction over a nonresident defendant in a diversity action, plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.  TH Agric. & Nutrition, 488 F.3d at 1286-87.

## I.      The Law Of The Forum State

The Kansas long-arm statute, K.S.A. § 60-308(b), permits the exercise of personal jurisdiction over a nonresident defendant who "caus[es] to persons or property within the state any injury arising out of an act or omission outside of this state by the defendant if, at the time of the injury . . . products, materials or things processed, serviced or manufactured by the defendant anywhere were used or consumed within the state in the ordinary course of trade or usage."  K.S.A. § 60-308(b)(1)(G).  This provision is designed to confer personal jurisdiction over those who engage in the manufacture or sale of products if they receive or can anticipate some direct or indirect financial benefit from the sale, trade, use or servicing of their products within Kansas.  Ling v. Jan's Liquors, 237 Kan. 629, 631, 703 P.2d 731, 733 (1985).  Here, Greenwich alleges that in the ordinary course of business, Xstrata's defective lead arrived at the Schlumberger facility in Kansas, where it caused damage to Schlumberger's equipment.  This is sufficient to confer statutory jurisdiction under subsection (b)(1)(G) of the Kansas long-arm statute.  K.S.A. § 60-308(b)(1)(G).

## II.     Due Process

For the exercise of personal jurisdiction to comport with due process, defendants must have

"minimum contacts" with the forum such that having to defend a lawsuit in the state would not "offend traditional notions of fair play and substantial justice." Dudnikov, 514 F.3d at 1070 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

To find sufficient contact with the forum state, the Court must determine that defendants should "reasonably anticipate being haled into court there." AST Sports Sci., Inc. v. CLF Distribution Ltd., 514 F.3d 1054, 1057 (10th Cir. 2008) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). The due process clause permits the exercise of general jurisdiction over defendants that have "continuous and systematic general business contacts" with the forum state, Melea, Ltd. v. Jawer SA, 511 F.3d 1060, 1066 (10th Cir. 2007) (quoting Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 416 (1984)), and the exercise of specific jurisdiction over defendants that purposefully direct activities toward the forum state, if the cause of action arises out of those activities, id. (citing Burger King Corp. v. Rudsewicz, 471 U.S. 462, 472-73 (1985)).[5]

The minimum contacts necessary for specific personal jurisdiction may be established where a defendant has purposefully directed its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to defendant's contacts with the forum. Trujillo v. Williams, 465 F.3d 1210, 1218 (10th Cir. 2006). The purposeful direction of activities toward a resident of the forum state requires an out-of-state defendant to commit some act by which it purposefully avails itself of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

---

[5]        Greenwich does not assert that the Court has general jurisdiction over Xstrata. In any event, Xstrata's limited contacts with Kansas are insufficient to create general jurisdiction. See Helicopteros, 466 U.S. at 416 ("continuous and systematic general business contacts" with forum state required).

Greenwich argues that Xstrata created minimum contacts with Kansas by (1) sending a lead sample to the Schlumberger facility in Kansas in June of 2006; (2) participating in teleconferences and exchanging email with Schlumberger employees who worked in Kansas; and (3) mistakenly intending to ship the lead to a Greenwich warehouse in Kansas.

      A.     <u>The Sample</u>

Greenwich argues that Xstrata created minimum contacts with Kansas by sending a lead sample directly to the Schlumberger facility in Lawrence, Kansas. Generally, the isolated act of sending a single product sample to the forum state is insufficient to establish purposeful availment. <u>See</u> <u>Hildebrand v. Steck Mfg. Co.</u>, 279 F.3d 1351, 1356 (Fed. Cir. 2002) (free sample sent to forum state insufficient to create personal jurisdiction); <u>Tate & Lyle Tech. Ltd. v. AIDP, Inc.</u>, No. 07-2050, 2007 WL 2680969, at *4 (C.D. Ill. Aug. 28, 2007) (free sample sent to forum address not purposeful availment); <u>Amazon.com, Inc. v.. Kalaydjian</u>, No. C00-1740R, 2001 WL 491752, at *4 (W.D. Wash. Feb. 21, 2001) (same). Moreover, Xstrata sent the sample at the request of Greenwich, which undermines the argument that Xstrata intended to direct its activities at Kansas residents. <u>See</u> <u>Frontier Paper & Packaging, Inc. v. E & S Paper Co.</u>, No. 1:06-cv-1485-SEB-JPG, 2007 WL 1836884, at *8 (S.D. Ind. June 22, 2007) (shipment of sample which non-resident did not initiate not proof of purposeful availment). On this record, the Court cannot find that Xstrata purposefully availed itself of the benefits of Kansas law by sending the lead sample to the Schlumberger facility in Kansas.

Even if Xstrata had purposefully availed itself of Kansas law by shipping the sample to the Schlumberger facility in Kansas, the third-party claims do not arise out of that sample; they relate to defects in the lead which Xstrata produced under its agreement with Greenwich. The product sample was not a component of that agreement and Greenwich does not assert a misrepresentation claim based

on the sample.  Accordingly, shipment of the sample is insufficient to create specific personal jurisdiction.

      B.    <u>Teleconferences And Emails</u>

Greenwich argues that Xstrata created minimum contacts with Kansas when its employees participated in telephone conferences and exchanged email with Schlumberger employees in Kansas. Phone calls and letters are not necessarily sufficient to establish minimum contacts. <u>Olsen v. Mapes</u>, 139 Fed. Appx. 54, 57 (10th Cir. 2005); <u>Far W. Capital, Inc. v. Towne</u>, 46 F.3d 1071, 1077 (10th Cir. 1995). The exercise of personal jurisdiction depends on the nature of those communications. <u>Olsen</u>, 139 Fed. Appx. at 57 (citing <u>Rambo v. Am. S. Ins. Co.</u>, 839 F.2d 1415, 1418 (10th Cir. 1988)). Except for one email from Hemenway to Eales in August of 2006, no Xstrata employee initiated communication with Schlumberger. At the request of Schlumberger, Xstrata employees participated in teleconferences with Schlumberger and Greenwich in May and August of 2006. The fact that Xstrata did not initiate these teleconferences suggests that it had no intent to purposefully direct its business activities toward Kansas. Schlumberger and Greenwich copied Xstrata on several emails, but the record does not suggest that Xstrata employees made an affirmative effort to communicate directly with Schlumberger. The one-sided communications which Schlumberger and Greenwich initiated are insufficient to establish minimum contacts. <u>See</u> <u>Dudnikov</u>, 514 F.3d at 1073 (unilateral activity of another party not appropriate consideration when determining sufficiency of contacts with forum); <u>see also</u> <u>Melea</u>, 511 F.3d at 1067 (obligation to third-party resident created under agreement with non-resident not purposeful availment).

Even if these communications show minimal contacts with Kansas, the third-party claims do not arise out of them. As noted above, the third-party claims concern defects in the lead which Xstrata produced in June of 2006. Except for the teleconference in May of 2006, all direct communication

between Xstrata and Schlumberger occurred after Xstrata produced the lead under the agreement with Greenwich. These after-the-fact communications did not give rise to the cause of action asserted in the third-party complaint. As for the teleconference in May of 2006, Greenwich does not argue that any portion of that communication is relevant to its claims against Xstrata for defective lead. The limited teleconferences and emails are insufficient to establish specific jurisdiction.

     C.    <u>Mistaken Intent To Ship Lead To Kansas</u>

Greenwich argues that Xstrata had minimum contacts with Kansas because it mistakenly believed that Greenwich maintained a warehouse in Kansas City, Kansas. According to Greenwich, the fact that Xstrata originally thought that it had to ship the lead to Kansas, rather than Missouri, indicates that "Xstrata had no qualms about shipping all of the lead directly into the state of Kansas for its own business purposes." <u>Memorandum Of Law In Opposition To Third-Party Defendant Xstrata Canada Corporation's Motion To Dismiss For Lack Of Personal Jurisdiction</u> (Doc #41) at 12. In fact, the confusion occurred because Greenwich's president misidentified the location of its warehouse. In any event, Xstrata actually shipped the lead to Missouri, so it did not establish meaningful contact with Kansas in the transportation process.[6]

On this record, the Court cannot find that Xstrata had minimum contacts with Kansas such that it could reasonably anticipate being haled into court here. Because the Court lacks personal jurisdiction

---

[6] Even if the Court were inclined to give weight to Xstrata's mistaken belief that it should ship the lead to Kansas, the parties' agreement called for Xstrata to ship the lead F.O.B. New Brunswick. This passed the risk of loss from Xstrata to Greenwich in Canada and suggests that Xstrata had no intent to purposefully direct the lead into the stream of commerce beyond that point. <u>See</u> <u>S. Copper, Inc. v. Specialloy, Inc.</u>, 245 F.3d 791, 2000 WL 1910176, at *4 (5th Cir. Dec. 22, 2000) (F.O.B. designation as place of shipment weakens argument that non-resident intended to avail itself of benefits of forum state); <u>Institute of Diagnostic Imaging v. DR Sys., Inc.</u>, No. A3-99-100, 2000 WL 33339625, at *3 (D.N.D. Jan. 24, 2000) (no purposeful availment in sale of imaging equipment to imaging center in North Dakota in part based on F.O.B. designation of California).

over Xstrata, it sustains the motion to dismiss.[7]

**IT IS THEREFORE ORDERED** that Third Party Defendant Xstrata Canada's Motion To Dismiss For Lack Of Personal Jurisdiction (Doc #29) filed March 31, 2008 be and hereby is **SUSTAINED**.  Xstrata is dismissed from the case.  All other claims remain.

Dated this 27th day of October, 2008 at Kansas City, Kansas.

s/  Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[7]        In the alternative, Greenwich seeks leave to conduct limited jurisdictional discovery on Xstrata's contacts with the State of Kansas.  Memorandum Of Law In Opposition To Third-Party Defendant Xstrata Canada Corporation's Motion To Dismiss For Lack Of Personal Jurisdiction (Doc #41) at 16.  Greenwich, however, has not made a preliminary showing of jurisdiction. Cent. State Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 946 (7th Cir. 2000) (at minimum, plaintiff must establish prima facie showing of personal jurisdiction before discovery should be permitted), cert. denied, 532 U.S. 943 (2001).  Greenwich fails to raise an issue of fact upon which jurisdiction could be found after discovery is completed.  Sizova v. Nat'l Inst. of Stds. & Tech., 282 F.3d 1320, 1326 (10th Cir. 2002) (citing Budde v. Ling-Temco Vought, Inc., 511 F.2d 1033,1035 (10th Cir. 1975)).  Greenwich does not show that additional discovery would likely produce evidence relevant to the jurisdictional question.  Doe v. State of Israel, 400 F. Supp. 2d 86, 121-2 (D. Colo. 2005) (jurisdictional discovery intended to supplement, not substitute for, initial allegations; at minimum, plaintiff must allege facts on which jurisdiction could be found after discovery is complete).  For these reasons, the Court denies the request for jurisdictional discovery.